Citation Nr: 1641930 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 10-33 818 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUE

Entitlement to an initial rating in excess of 10 percent from February 6, 2009 to March 28, 2010, and in excess of 70 percent since March 29, 2010 for service-connected posttraumatic stress disorder (PTSD), to include entitlement to TDIU rating for PTSD.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

J.E. Tracy, Associate Counsel


INTRODUCTION

The Veteran had active service from July 1965 to July 1968 and from November 1970 to December 1974.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas.

In March 2011, the Veteran testified at a video conference hearing before a Veterans Law Judge (VLJ) other than the undersigned, and a copy of the transcript of the hearing has been associated with the claims folder. In August 2013, this case was remanded for additional development by the VLJ who conducted the hearing. It has now been assigned to the undersigned.

In March 2016 correspondence, the Board advised the Veteran that the VLJ who conducted the Travel Board hearing was unable to participate in the current appeal, and informed him that he was entitled to another hearing if he desired. The letter also informed him that the Board would assume he did not desire another hearing if he did not respond to the letter within 30 days. As a response has not been received from the Veteran to date, the Board is proceeding accordingly.


FINDINGS OF FACT

1. Prior to February 11, 2010, the Veteran's PTSD was manifested by symptoms such as depressed mood, anxiety, suspiciousness, occasional nightmares, panic attacks (weekly or less often), chronic sleep impairment, but not occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

2. As of February 11, 2010, the Veteran's PTSD has not been productive of more than occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships.

3. The evidence shows that the Veteran's service-connected PTSD precluded him from securing and maintaining substantially gainful employment beginning February 11, 2010.


CONCLUSIONS OF LAW

1. Prior to February 11, 2010, the criteria for a disability rating of 30 percent, but not higher, for service-connected PTSD have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A and 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, and 4.130, Diagnostic Code 9411 (2015).

2. As of February 11, 2010, the criteria for a disability rating in excess of 70 percent, but no higher, for service-connected PTSD have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A and 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, and 4.130, Diagnostic Code 9411 (2015).
3. The criteria for a total rating based on individual unemployability due to a service-connected disability have been met beginning February 11, 2010. 38 U.S.C.A. §§ 1154 (a), 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.1, 4.16, 4.19, 4.25 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Notice and Assistance Requirements

Initially the Board finds that, with respect to the claims discussed herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The Veteran has not argued otherwise and, to the extent he may have, as discussed in further detail below, the Board finds no error on VA's part.

The RO's actions substantially complied with the remand instructions pursuant to the Board's August 2013 remand. Stegall v. West, 11 Vet. App. 268, 271 (1998).

Analysis

Disability ratings are intended to compensate impairment in earning capacity due to a service-connected disorder. 38 U.S.C.A. § 1155. Separate diagnostic codes identify the various disabilities. Id. Evaluation of a service-connected disorder requires a review of the veteran's entire medical history regarding that disorder. 38 C.F.R. §§ 4.1 and 4.2.

It is also necessary to evaluate the disability from the point of view of the veteran working or seeking work, 38 C.F.R. § 4.2, and to resolve any reasonable doubt regarding the extent of the disability in the veteran's favor, 38 C.F.R. § 4.3. If there is a question as to which evaluation to apply to the veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.
38 U.S.C.A. § 1154(a) requires that the VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim to disability benefits. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). When analyzing lay evidence, the Board should assess the evidence and determine whether the disability claimed is of the type for which lay evidence is competent. See Davidson, 581 F.3d at 1313; Kahana v. Shinseki, 24 Vet. App. 428 (2011).

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. It would also include statements contained in authoritative writings such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2).

The Veteran's claim for a higher evaluation for his PTSD is an original claim that was placed in appellate status by his disagreement with the initial rating award. In these circumstances, separate ratings may be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

The Veteran's service-connected PTSD is evaluated under Diagnostic Code 9411. The regulations establish a general rating formula for mental disorders. 38 C.F.R. § 4.130. When determining the appropriate disability evaluation to assign, the Board's primary consideration is a veteran's symptoms, but it must also make findings as to how those symptoms impact a veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, (2002). Because the use of the term "such as" in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Id. at 442; see also Sellers v. Principi, 372 F.3d 1318 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran's impairment must be "due to" those symptoms, a veteran may only qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118.

In the past, psychiatric examinations frequently included assignment of a Global Assessment of Functioning (GAF) score, which is defined by the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), as a number between zero and 100 percent that represents the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health illness. Higher scores correspond to better functioning of the individual. 

GAF scores from 51 to 60 reflect moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupation, or school functioning (e.g., few friends, conflicts with peers or co-workers). Scores from 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupation, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well with some meaningful relationships. See DSM-IV.

The GAF scores assigned in a case, like an examiner's assessment of the severity of a condition, are not dispositive of the rating issue; rather, the GAF score must be considered in light of the actual symptoms of the Veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126(a)

VA had previously adopted the DSM-IV for rating purposes. VA implemented DSM-5, effective August 4, 2014, and the Secretary, VA, determined that DSM-5 applies to claims certified to the Board on and after August 4, 2014. See 79 Fed. Reg. 45,093, 45,094 (Aug. 4, 2014). As the Veteran's increased rating claim was originally certified to the Board in 2011 (prior to August 4, 2014), the DSM-5 is not applicable to this case. 

Effective August 4, 2014, VA also amended the regulations regarding the evaluation of mental disorders by removing outdated references to DSM-IV. The amendments replace those references with references to the recently updated DSM-5. However, according to the DSM-5, clinicians do not typically assess GAF scores. The DSM-5 introduction states that it was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. 

The Veteran's rating is staged. He is rated at 10 percent from the date of his original claim, February 6, 2009, to March 28, 2010. The next higher, 30 percent, disability rating requires a showing of:

Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

A 50 percent disability rating requires a showing of:

Occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

The criteria for a 70 percent rating are:

Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships.

And, the criteria for a 100 percent rating are:

Total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

38 C.F.R. § 4.130.

The medical evidence consists of VA treatment records from July 2010 through November 2015; and VA examinations from May 2009 and March 2014.

There are no treatment records prior to the May 2009 VA examination; however, the Veteran indicated at the examination that he had previously gone to some group counseling sessions. The examiner indicated that the Veteran appears to be a reliable historian. The Veteran complained of almost daily intrusive memories of his combat experiences in Vietnam. He complained of nightmares that occurred approximately once a week and he said he suffered distress when exposed to stimuli which reminds him of his combat experiences, such as unexpected loud noises or news about the current war. The Veteran said that he began suffering more frequent re-experiencing since he retired from work in February of 2009 and has more time on his hands. The Veteran had tried to push away painful thoughts, feelings and memories as much as possible. He said he avoided situations that he knows will cause him difficulty such as being around crowds, weapons or movies about combat. The Veteran expressed having a loss of interest in many previously pleasurable activities. The Veteran stated that he tries to stay to himself and described some degree of emotional and social withdrawal through the years. The examiner explained that apparently the Veteran's emotional withdrawal and tendency to irritability contributed to the disintegration of his first two marriages. The Veteran described disturbed sleep patterns with early morning awakening. He stated that he has had less trouble in recent years with irritability, but his anger and irritability did cause trouble in dealings with his children and in his first two marriages. The Veteran was described as hypervigilant - still having to scan his perimeter and check out unexpected noises at night. He startles easily.

The Veteran had worked for over thirty years as a heavy equipment operator. He stated that he did well at work; however, he retired in February of 2009. The Veteran states that he has just recently started going to a post-traumatic stress disorder treatment group apparently run by the Mountain Home, Arkansas Veterans Administration Outpatient Clinic. The Veteran stated that seeking treatment there has been helpful for him, and he is surprised that he likes going there. The Veteran denied any past psychiatric treatment. He also denied drug or alcohol difficulties.

The Veteran reported that he has been married three times. His current marriage has lasted for 21 years. The Veteran stated that he is active in his church but otherwise has had a decreased level of social participation through the years because of his emotional and social withdrawal. He stated that he finished high school with average grades but was socially active and outgoing during high school years. He denied any legal difficulties. He indicated that he was able to care for his activities of daily living.

Upon examination, the Veteran was alert, oriented and cooperative. His mood appeared neutral. His affect was somewhat guarded. His thoughts were clear and goal oriented. There was no evidence of delusions or hallucinations. His cognitive abilities, including capacity for abstraction, memory and judgment, were intact. The Veteran's grooming and hygiene was appropriate. Speech and communication were appropriate. There were no panic, paranoia or obsessional rituals. There was some ongoing hypervigilance. There was no suicidal ideation.

The examiner assigned a GAF score of 65. The examiner noted that the Veteran's symptoms have caused trouble in family situations that have contributed to some social isolation and have resulted in an increase in a painful level of re-experiencing phenomenon since the Veteran's retirement in February 2009.

The first substantive VA treatment record concerning the Veteran's mental health is dated February 11, 2010. A psychosocial assessment was performed. At that time, the Veteran denied prior in-patient psychiatric treatment. He described only brief evaluative treatment for PTSD and no prior pharmacotherapy. Again, he explained he had been attending outpatient PTSD group sessions and has found them helpful. He reported getting "pretty down" and thinking "about killing people" sometimes. However, he reported that he does not plan to ever do it. He said he can hardly sleep and has nightmares. He denied suicidal ideation. He described having a "good overall" relationship with his current wife. He said he has no other long-term friendships and never socialized much after Vietnam. He has no hobbies. His daily routine includes running errands for his wife, who manages a restaurant, and watching television. The Veteran was assigned a GAF score of 50.

The next VA treatment record of note is dated March 29, 2010. The Veteran was noted to have expressed anger that his disability rating was not higher. The Veteran reported that his worst symptom is increased anger and irritability. He once described waiting outside a bar with a gun and getting in several physical fights. However, the Veteran never had legal charges, and his anger levels decreased since he quit drinking. Still, he has the thought of wanting to hit or kill people that make him angry, but recognizes the legal consequences of such actions, and so has no intent to act on his thoughts.

The Veteran also reported avoidance of groups of people. He does not like to go out in public. He gets startled with loud noises. He also gets the feeling that people are watching him. The Veteran also reported feeling guilty he did not do more with his life. The Veteran reported having some depressive symptoms. However, most are intermittent and come with anxiety. He sleeps 4-5 hours a night and has nightmares about 1 time a week. He reported a decrease in interests due to avoidance. He reported some hope for the future. There was no suicidal ideation reported. He described having passing homicidal ideation without intent. Also, there was no psychotic or manic history reported.

The note indicates that the Veteran's symptoms have fluctuated over the years, they were more severe in the past when combined with drug abuse, but the Veteran has now been sober for 6 years. The Veteran said he was interested in medication options to help with anger, anxiety, and sleep. The treatment provider discussed Paxil as an option. The Veteran was again assessed to have a GAF score of 50.

Following this visit, the Veteran began regular treatment for his PTSD and began taking medication. He was assessed again on June 21, 2010. He reported that the medication helps him sleep better. He also reported feeling more calm, less irritable, and less severe reactions to anger. He feels more in control. He reported he still does not like being in crowded places. He denied suicidal and homicidal ideation. His mood was good. His affect was euthymic with intact range. His thought process was linear. His GAF assessment was increased to 55.

Further VA treatment records show symptoms improving or remaining the same in the years after his visits in February and March 2010. For example, in December 2013 his GAF score was assessed as 51. His behavior was pleasant and cooperative with good eye contact. He described his mood as good. His thought process was relevant, logical and linear. He did not describe any suicidal or homicidal ideation. He was alert and properly oriented. His memory was intact. His attention and concentration were "ok".

The Veteran underwent a second VA examination in March 2014. He reported that his current marriage is "going good". His wife does not work outside the home. The Veteran lives with his wife, and spends his time taking care of their horses. He also does yard work when the weather is good. He does not have any friends and his own children "stay away from" him. His wife goes to visit the children without him. The Veteran reports that he does not get along with people and does not trust anyone. He lives out in the country to avoid people. He does not like to leave the house and avoids shopping. If he goes to a restaurant, he wants to sit next to a door because "I got to have a way out". He has not been to a movie theater since his time in the service. The Veteran reported that he becomes angry over "any little thing". He tries to walk away but sometimes expresses the anger verbally or by slamming things. His last fight was about 4 years ago.

The Veteran reported he continues to see a psychiatrist about once every three months and receives Divalproex and Paroxetine. He is in PTSD group therapy once every two weeks.

The following symptoms were listed as present by the examiner: depressed mood, anxiety, suspiciousness, near continuous panic or depression affecting the ability to function independently, appropriately and effectively, chronic sleep impairment, mild memory loss such as forgetting names, directions or recent events, flattened affect, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances, including work or work-like setting and suicidal ideation.

The Veteran is capable of handling his financial affairs, according to the examiner. The examiner gave the following opinion: "The diagnosis of post-traumatic stress disorder was based on criteria contained in DSM-5. The [Veteran] is currently unemployable due to the impact of his post-traumatic stress disorder on his concentration, social comfort, ability to cooperate and communicate with others in normal circumstances, ability to tolerate his anger and frustration in conflict situations, and general emotional stability. It is unlikely that he could work a full day or that he could attend work regularly and reliably because of his post-traumatic stress disorder."

The examiner opined that the Veteran suffers from occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. The examiner assigned a GAF score of 48. The examiner noted the Veteran's low social tolerance, restricted activity, lack of friends, irritability, and how his own children avoid him.

Following the March 2014 VA examination, the Veteran's GAF score has consistently been assessed as 51 throughout 2014 and 2015. In July 2015 his behavior was noted to be pleasant and cooperative with good eye contact. The Veteran described his mood as good. His thought process was relevant, logical and linear. He did not describe any suicidal or homicidal ideation. He was alert and properly oriented. His memory was intact. His attention and concentration were described as "ok". His mood was described as stable with the current medicine regimen. The Veteran was noted to not be a danger to himself. The treatment records since that time continue to note the medicines the Veteran takes for his mental health but do not add anything further regarding his symptoms.

The Veteran contends that he is entitled to a higher initial rating because he suffered from severe social and occupational impairment. The representative argued that the Veteran avoids crowds, loud noises, and anything that reminds him of his time spent in Vietnam. Also, he has had thoughts of hurting others but does not act because of the legal consequences.

After considering all the evidence of record, the Board finds that the evidence is sufficient to establish that an initial 70 percent disability rating, but no higher, is warranted for the Veteran's service-connected PTSD, from February 11, 2010. The RO had granted the 70 percent rating effective March 29, 2010. While the March 29, 2010 is described as an "initial" visit; there was an earlier in-take assessment conducted on February 11, 2010 wherein the symptoms were described much the same as on March 29, 2010. Concerning the earlier period from February 6, 2009 to February 10, 2010, the Board finds that the Veteran is entitled to a 30 percent rating, but no higher.

30 Percent Rating

The RO assigned a rating of 10 percent during the initial stage. However, the Board finds that the symptoms described at the VA examination of May 2009 warrant a rating of 30 percent.


At the May 2009 examination, the Veteran was assigned a GAF score or 65, noted to be indicative of mild symptoms, but generally functioning pretty well. The Board notes that the GAF score of 65 would be most consistent with the criteria for a 30 percent disability rating.

The symptoms described at the 2009 examination included almost daily intrusive memories of his combat experiences. He complained of nightmares that occurred approximately once a week and he said he suffered distress when exposed to stimuli which reminded him of his combat experiences. He also avoided situations that would cause him difficulty such as being around crowds, weapons or movies about combat. The Veteran had a loss of interest in many previously pleasurable activities. He avoided people and emotional connections. He had a tendency to irritability. The Veteran was described as hypervigilant.

These symptoms are indicative of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily. A higher 50 percent disability rating is not warranted. A 50 percent rating would require a showing of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

Upon examination, the Veteran was alert, oriented and cooperative. His mood was neutral. While his affect was somewhat guarded, his thoughts were clear and goal oriented. There was no evidence of delusions or hallucinations. His cognitive abilities were all intact. The Veteran's grooming and hygiene were appropriate. Speech and communication were appropriate. There were no panic, paranoia or obsessional rituals. There was no suicidal ideation. His level of symptoms during the initial period from February 6, 2009 to February 10, 2010, does not rise to the level of a rating higher than 30 percent.

70 Percent Rating

The Board finds that a 70 percent disability rating, but no higher, is warranted beginning February 11, 2010, because the VA treatment records beginning that date show the Veteran's PTSD symptoms were of significant severity to cause occupational and social functioning with deficiencies in most areas such as work and social relations, judgment, thinking, and/or mood.

The Veteran's treatment records as of February 11, 2010 showed his PTSD was manifested by symptoms such as being depressed and thinking "about killing people" sometimes. While he never planned to actually hurt others he had some homicidal ideation. He slept and had nightmares. He described only having one relationship with another person, his wife. His GAF score was decreased to 50. While the GAF score changed over the next several years, it never returned to the 65 level from the 2009 examination.

The treatment records and the 2014 examination continued to show that he suffered from intrusive thoughts; exaggerated startle response; hypervigilance; isolation; anger control issues; irritability; depression; anxiety; and inability to sustain social and work relationships.
The Veteran's inability to sustain social and work relationships is a criterion for a 70 percent disability rating. In addition, the Veteran's treatment records noted that he felt no interest in socializing or doing things with anyone other than his wife. This indicates his depression was continuous, it is not so clear that it affected his ability to function independently, appropriately and effectively. However, given his near total isolation, and his anger, and thoughts of wanting to hurt others, the Board will give the benefit of the doubt and find that the Veteran's symptoms did affect his ability to function independently, appropriately and/or effectively. Thus, it finds that this 70 percent criterion is met as of February 11, 2010.

However, the Board finds that the evidence fails to demonstrate that the Veteran's PTSD was productive of total occupational and social impairment warranting a 100 percent schedular evaluation at any time during the appeal. The evidence shows that he was able to help his wife with her business and was able to maintain a "good" relationship with her. Furthermore, his PTSD was not so severe as to manifest in symptoms such as impairment in thought processes or communication, grossly inappropriate behaviors, persistent homicidal or suicidal ideations with plan and/or intent, intermittent inability to perform activities of daily living, disorientation to time or place, memory loss for such things as his own name, names of close relatives, or his occupation, or other symptoms of similar severity or effect indicative of total occupational and social impairment. Consequently, the Board finds that a 100 percent disability rating is not warranted.

The Board has also considered the Veteran's statements regarding the severity of his PTSD. Certainly, as a lay person, the Veteran is competent to attest to symptoms that he experiences, such as depression and irritability. His statements describing his symptoms are considered to be competent evidence. King v. Shinseki, 700 F .3d 1339 (Fed.Cir.2012); Layno v. Brown, 6 Vet. App. 465 (1994). These statements, however, must be viewed in conjunction with the medical evidence as required by the rating criteria. The Veteran is not competent to identify a specific level of disability of this disorder according to the appropriate diagnostic codes. Such competent evidence concerning the nature and extent of the Veteran's symptoms have come from treatment assessments and examination reports that have been provided by the medical personnel who examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports) directly address the criteria under which these disabilities are evaluated. As such, the Board finds these records to be more probative than the Veteran's subjective complaints of increased symptomatology.

For the foregoing reasons, the Board finds that the evidence establishes that a disability rating of 30 percent, but no higher, is warranted for the Veteran's service-connected PTSD prior to February 10, 2010; and that a 70 percent disability rating, but no higher, is warranted thereafter. The Board has considered the doctrine of reasonable doubt, but finds that the record does not provide an approximate balance of negative and positive evidence on the merits. Gilbert v. Derwinski, 1 Vet. App. 49, 57-58 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3.

Other Considerations

The above determinations are based on consideration of the applicable provisions of VA's rating schedule. The Board finds that at no time has the disability under consideration been shown to be so exceptional or unusual as to warrant the referral for consideration of any higher ratings on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1). Here, there is an absence of evidence of marked interference with employment (i.e., beyond that contemplated in the assigned evaluation), frequent periods of hospitalization, or evidence that the Veteran's service-connected PTSD has rendered impractical the application of the regular schedular standards. Furthermore, his symptoms are all specifically contemplated by the criteria discussed above. Thus, the criteria for invoking the procedures set forth in 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996).

It bears emphasis that the schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. Generally, the degrees of disability specified in the rating schedule are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1 (2015). Thus, based on the record before it, the Board does not find that the evidence demonstrates any unusual disability with respect to the claim that is not contemplated by the rating schedule. The very symptoms the Veteran experiences are all addressed by the rating schedule. Thun v. Peake, 22 Vet. App. 111 (2008). The Veteran's PTSD has not required frequent inpatient care or caused marked industrial impairment beyond that addressed in the schedular rating. As a result, the Board concludes that a remand for referral of the rating issue to the VA Central Office for consideration of extra-schedular evaluation is not warranted.

TDIU

Currently, the Veteran has been granted a TDIU award effective March 29, 2010. In the August 2013 remand, the Board added entitlement to a TDIU to the appeal. The United States Court of Appeals for Veterans Claims (Court) has held that a request for a TDIU, whether expressly raised by a veteran or reasonably raised by the record, is not a separate claim for benefits, but is rather part of the initial adjudication of a claim or as part of a claim for increased compensation. Rice v. Shinseki, 22 Vet. App. 447 (2009). If the claimant or the record reasonably raises the question of whether the veteran is unemployable due to the disability for which an increased rating is sought, then part and parcel of that claim for an increased rating is whether a total rating based on individual unemployability as a result of that disability is warranted. Id at 455. During his video conference hearing, the Veteran stated that he was currently unemployed and indicated that he had to quit his last job due to his service-connected PTSD.

The Board finds that the Veteran is entitled to a TDIU award from February 11, 2010. As noted in the discussion above, while the March 29, 2010 record, which was used by the RO as the date to award a TDIU, was noted to be an "initial" visit, the Veteran's PTSD was actually assessed on February 11, 2010 and showed marked worsening from the May 2009 VA examination report. However, the Veteran is not entitled to a TDIU rating prior to February 11, 2010.
Even when the percentage requirements of 38 C.F.R. § 4.16(a) are not met, as in the period prior to February 11, 2010, a TDIU may be granted on an extra-schedular basis in exceptional cases when the Veteran is unable to secure and follow a substantially gainful occupation by reason of service connected disability. 38 C.F.R. § 4.16 (b).

However, in this instance, a TDIU rating is not warranted for the period prior to February 11, 2010. The medical evidence prior to that date does not support that the Veteran's PTSD precluded him from securing and following substantially gainful employment. At the May 2009 VA examination, the examiner found that the Veteran had a GAF score of 65, an indication of mild symptoms. The examiner noted that the Veteran's symptoms have caused trouble in family situations that have contributed to some social isolation and have resulted in increase in a painful level of re-experiencing phenomenon since the Veteran's retirement. It is not until the noted worsening of the symptoms in February 2010, that the Veteran's ability to secure and follow a substantially gainful occupation by reason of his PTSD was evidenced.


ORDER

Entitlement to an initial rating of 30 percent, but no higher, from February 6, 2009 to February 10, 2010 for service-connected PTSD is granted.

Entitlement to an initial rating of 70 percent since February 11, 2010 for service-connected PTSD is granted.

Entitlement to a total disability rating for PTSD based on individual unemployability (TDIU) since February 11, 2010 is granted.




____________________________________________
M.C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs